IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-01833-CMA-KLM

TAMMY ROACH,

    Plaintiff,

v.

GEN 3 CO, LLC,

    Defendant.

_____

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
_____

This matter is before the Court on Defendant Gen 3 Co., LLC's Motion for Summary Judgment, in which Defendant argues that it is entitled to judgment as a matter of law on both of Plaintiff Tammy Roach's Title VII employment discrimination claims. (Doc. # 32.) For the reasons discussed below, the Court grants Defendant's Motion for Summary Judgment.

## I.     BACKGROUND

Defendant is a construction company based in Denver, Colorado. (Doc. # 1 at 2.) It employed Plaintiff as an administrative assistant from May 18, 2017, to October 6, 2017. (Doc. # 1 at 3, 7.)

### A.     HOSTILE WORK ENVIRONMENT ALLEGATIONS

Plaintiff alleges that her coworker, Jonathan Butler, regularly made inappropriate comments towards her (Doc. # 32-1 at 17) and sexually harassed her four specific times

(Doc. # 32 at 2).[1] Defendant does not dispute that these four incidents occurred. (Doc. # 32 at 3–8.)

Plaintiff reports that Butler would say or do things, nearly on a daily basis, that made her uncomfortable. (Doc. # 34 at 1.) For example, Butler regularly winked at Plaintiff and blew her kisses. (Doc. # 1 at 3.) Butler also frequently told Plaintiff that she was beautiful and complimented her eyes. (*Id.*) Plaintiff ignored Butler. (*Id.*)

The first specific incident of alleged sexual harassment occurred in mid-June 2017, when Butler entered Plaintiff's office and offered to rub Plaintiff's "hard-working hands." (Doc. # 1 at 4.) When Plaintiff's supervisor, James Palmer, overheard this, Palmer told Butler, "Dude, get back to work." (*Id.*) Palmer immediately talked with Butler further and told him that his comments were not appropriate for the workplace. (Doc. # 32-1 at 42.) Palmer told Butler not to talk to Plaintiff anymore. (*Id.*)

The second incident happened approximately one or two weeks later, in late June 2017. (Doc. # 32-1 at 6–8.) As Plaintiff and other employees were returning from a break, Butler, who is African-American, invited Plaintiff to be with him as a "black man," and said that he could make her happy. (*Id.* at 10.) Butler stated that he wanted Plaintiff to give him an opportunity to "love and treat [her] right." (*Id.* at 6.) Plaintiff interpreted these comments as an invitation for Plaintiff to have sex with Butler. (Doc. # 1 at 3.) Plaintiff later told Palmer about Butler's comments. (Doc. # 32-1 at 10–11.)

---

[1] The Court uses Defendant's characterization of four specific instances of sexual harassment rather than Plaintiff's characterization of three specific instances of sexual harassment. During Plaintiff's deposition testimony, Plaintiff talked about four instances, but in her official documents, Plaintiff claims there were three instances. Assuming four instances of sexual harassment is viewing the evidence in the light most favorable to Plaintiff.

2

The third incident occurred in early August 2017, when Butler followed Plaintiff into the inventory supply room. (*Id.* at 11.) Plaintiff was opening boxes, and Butler said to her, "Here, sweetie, here, I have a box cutter. . . . I'll help you open those boxes." (*Id.* at 12.) As he handed Plaintiff a box cutter, Butler touched Plaintiff's hand and rubbed her arm. (*Id.*) Plaintiff told Butler that he was not supposed to be in the inventory supply room. (*Id.*) Plaintiff alleges that Butler's conduct made her very uncomfortable. (Doc. # 1 at 4.) When Plaintiff walked by Butler and left the room, Butler did not touch or impede Plaintiff. (Doc. # 32-1 at 15.) When Plaintiff told Palmer about the incident, Palmer believed the touching to be accidental. (*Id.* at 44–45.) Still, Palmer directed Mike Davis, the leadman, to watch Butler and intervene if he saw Butler talking to Plaintiff. (*Id.* at 45.)

The fourth incident happened the morning of August 29, 2017, when Plaintiff was alone in the office. (Doc. # 1 at 5.) Butler entered the room and was "hyper." (Doc. # 32-1 at 20.) He said to Plaintiff, "Oh my God, Tammy . . . I have all these bedbugs in my place. It's a new place, and I got bedbugs in my bed, and you won't believe these f\*\*king things, they've eaten me up. They've . . . eaten at my f\*\*king dick." (*Id.*) Butler then pulled up his shirt to show Plaintiff the bedbug bites on his torso. (*Id.*) He also pulled down the waistband of his pants, exposing his boxer shorts and some of his pubic hair. (*Id.*) Butler did not expose his genitals to Plaintiff. (*Id.*) Plaintiff said, "Whoa, whoa, we need to talk to [Palmer] about this," and left the office to look for Palmer. (*Id.* at 20–21.) When Plaintiff was deposed, she stated that she did not interpret Butler's behavior on this occasion to be sexual. (*Id.* at 30.)

Meanwhile, Butler left the office and encountered Davis, the leadman. (*Id.* at 57.) Butler lifted his shirt and pulled down his pants to show Davis the bedbug bites on his torso and legs. (*Id.*) Davis told Butler that he was behaving inappropriately. (*Id.*) Butler pulled up his pants and went back to work, but Davis continued to watch him. (*Id.* at 58; 60.) Butler was acting strangely and became irate when he realized Davis was watching him. (*Id.* at 60–61.) Davis and another employee sent Butler home for the day, but they asked Butler to come back the next day. (*Id.* at 61.)

Later that day, Plaintiff told both Davis and Palmer about her encounter with Butler. (*Id.* at 47, 62.) Davis testified that he and Plaintiff agreed that Butler "did the same thing" to both of them. (*Id.* at 62.) Palmer called Butler and asked him to come back to work after taking a drug test. (Doc. # 34-1 at 13.) Butler declined and told Palmer that he was quitting the job immediately because he had found another job in sanitation. (*Id.* at 13.) Butler never returned to Defendant's workplace, and Plaintiff never saw Butler again. (Doc. # 32-1 at 31–32.)

Palmer never documented any of Plaintiff's complaints about Butler or reported her concerns to upper management. (Doc. # 34-1 at 17.) Aside from a very brief conversation with Shaun Hartley, Field Superintendent, at a personal function (*Id.* at 3), Plaintiff did not raise her concerns about Butler's conduct to anyone in upper management either because she was told to follow her "chain of command" (Doc. # 32-1 at 33). Plaintiff admits that Palmer was never hostile to or displeased with her for expressing her concerns about Butler. (*Id.* at 34.) Palmer states in an affidavit that he

did not have "any animosity, displeasure, or ill feelings" for Plaintiff because of her allegations. (*Id.* at 73.)

## B.     RETALIATORY FIRING ALLEGATIONS

On October 5, 2017, approximately five weeks later, Defendant's owner, Tyler Elward, entered the shop office when Palmer was not there. (Doc. # 1 at 7.) Plaintiff initiated a conversation with Elward, telling him that work was slow in the shop and that employees were upset because they did not have enough to do. (*Id.*) Soon thereafter, the Defendant's President, Jeff Austad, entered the shop to ask Palmer why the employees were not busy. (Doc. # 32-1 at 52–53.) Austad and other upper management members were upset because at the time, the shop actually had a heavy workload. (*Id.*) Palmer learned that Plaintiff's conversation with Elward led to Austad questioning Palmer about the employees' apparent inactivity. (*Id.*)

Palmer met with Jerry Bowman, Defendant's Director of Operations, to discuss how to respond to "the uproar" Plaintiff caused with upper management. (*Id.* at 36.) Palmer and Bowman decided to terminate Plaintiff's employment, purportedly because her not following the chain of command was "the last straw." (*Id.* at 55–56.) Defendant alleges that Palmer and Bowman had previously discussed terminating Plaintiff's employment for other reasons, such as tardiness, spending too much time talking with one of her coworkers, and not understanding enough about the construction business. (*Id.*)

The next morning, October 6, 2017, Palmer fired Plaintiff for not following the chain of command. (Doc. # 1 at 7.) The same day, Palmer emailed Defendant's human

resources and management staff to inform them of his and Bowman's decision and the reasoning behind it. (Doc. # 32-1 at 70.) Bowman was not aware of Plaintiff's complaints about Butler until after Plaintiff was fired. (*Id.* at 68–69.)

**C.    PROCEDURAL HISTORY**

Plaintiff filed this action against Defendant on July 19, 2018. (Doc. # 1.) In her Amended Complaint, Plaintiff alleges two claims: (1) Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., by permitting a hostile work environment, and (2) Defendant violated Title VII by firing Plaintiff in retaliation for her reporting of workplace harassment. (Doc. # 9 at 1.) Plaintiff seeks back pay, reinstatement or front pay, compensatory damages, punitive damages, and attorneys' fees and costs. (*Id.* at 2.) Defendants timely answered on September 17, 2018. (Doc. # 6.)

Defendant moved for summary judgment on June 20, 2019. (Doc # 32.) It asserts that there are no genuine disputes of material fact about either of Plaintiff's claims. (*Id.* at 1.) Plaintiff argues otherwise in her Response, filed on July 10, 2019 (Doc. # 34), to which Defendant replied on July 24, 2019 (Doc. # 35).

## I.    GOVERNING LAW

**A.  SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs.*, Inc.,

259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that

7

would support a verdict in her favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### B. TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), prohibits employers from discriminating on the basis of sex. 42 U.S.C. §§ 2000e, *et seq*. The applicable regulations make clear that sexual harassment that creates an "intimidating, hostile, or offensive work environment" is a form of discrimination on the basis of sex, and therefore is a violation of Title VII. 29 C.F.R. § 1604.11(a). Employers are responsible for sexual harassment in the workplace if they know or should have known about the conduct, unless they take immediate and appropriate corrective action. 29 C.F.R. § 1604.11(d). In addition, Title VII makes it unlawful for employers to discriminate against any of its employees who have opposed unlawful harassment in the workplace. 42 U.S.C. § 2000e-3(a).

## II.　DISCUSSION

Plaintiff alleges that: (1) Defendant permitted Butler to sexually harass her and thereby caused a hostile work environment, and (2) fired her in retaliation for reporting Butler's sexual harassment. The Court addresses each claim in turn. In light of the Court's conclusion that Defendant has shown that there is no genuine dispute as to material fact on either claim, the Court grants Defendant's Motion for Summary Judgment.

**A.    CLAIM 1: HOSTILE WORK ENVIRONMENT**

To prevail on a Title VII hostile work environment claim, Plaintiff must prove three elements. First, unwelcome, sexually-oriented conduct must have been sufficiently severe or pervasive enough to alter the conditions of Plaintiff's employment and create an abusive working environment. *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). Second, the severe or pervasive harassment was based on Plaintiff's gender. *Id.* Third, Defendant failed to take steps reasonably calculated to end the harassment of Plaintiff. *Adler*, 144 F.3d at 676.

The Tenth Circuit explains that an employer may satisfy this third element if either (1) the harassment does not stop, but the employer responds promptly and proportionally to the plaintiff's complaints, or (2) the harassment stops, "which in turn evidences reasonable calculation." *Adler*, 144 F.3d at 676. Examples of reasonable employer responses include reprimands, prompt investigation of the allegations, or oral or written warnings to refrain from harassing conduct. *Id*. Though an employer is not strictly liable if harassment persists, any employer who "condones or tolerates the creation of a hostile work environment shall be held liable." *Fullwiley v. Union Pac. Corp.* 273 F. App'x 710, 718 (10th Cir. 2008). When assessing hostile work environment claims, courts must consider the totality of circumstances. *Oncale*, 523 U.S. at 81.

In the instant case, Defendant has met its burden by showing that there is an absence of a genuine dispute of material fact, particularly with regard to element three. The evidence shows that Defendant took steps reasonably calculated to remedy the harassment.

First, When Plaintiff reported Butler's harassment to Palmer and Davis, both took prompt and proportional action. After the first incident where Butler offered to rub Plaintiff's hands, Palmer told Butler to leave. (Doc. # 1 at 4.) Palmer reprimanded Butler later, telling Butler that his comments were not appropriate for the workplace and that he should stop talking with Plaintiff. (Doc. # 32-1 at 42.) After the second incident, when Butler crudely asked Plaintiff out, Plaintiff cannot recall what she told Palmer about the incident or what Palmer said in response. (*Id.* at 10–11.) After the third incident in the inventory supply room, even though Palmer believed the touching to be accidental, Palmer spoke with the leadman and asked him to watch Butler and intervene if he saw him speaking with Plaintiff. (*Id.* at 44–45.) After the fourth incident when Butler showed Plaintiff his bed bug bites, Davis sent Butler home for the day. (*Id.* at 61.) Considering the totality of the circumstances, each of these actions by Defendant was reasonable. By taking these actions, Defendant in no way condoned or tolerated the creation of a hostile work environment.

Second, once Palmer called Butler and asked him to take a drug test upon returning to work, Butler quit and the harassment of Plaintiff stopped. (Doc. # 34-1 at 13.) As the Tenth Circuit has noted, the stoppage of the harassment "evidences reasonable calculation" on the part of the employer. *Adler*, 144 F.3d at 676.

When a defendant sets forth sufficient evidence to demonstrate that its actions were reasonably calculated to end a plaintiff's workplace harassment, a trial court should grant summary judgment to the defendant. *Adler*, 144 F.3d 664. In *Adler*, the Tenth Circuit upheld the trial court's granting of summary judgment to the defendant

because the defendant produced exhibits showing that it adequately responded to the harassment of the plaintiff, and the plaintiff did not demonstrate any genuine issue of material fact. *Id.* at 671. In the instant case, Defendant explained how it responded proportionally to Plaintiff's allegations of harassment, and Plaintiff does not dispute these facts. Therefore, summary judgment is appropriate because Defendant demonstrated that its actions were reasonably calculated to end Plaintiff's harassment.

Because the third element of Plaintiff's hostile work environment claim fails, it is not necessary to analyze the first or second. The standard for summary judgment on this claim is met: even when viewing the facts in a light most favorable to Plaintiff, no rational trier of fact could determine that Defendant failed to take reasonable steps to end the harassment. Therefore, Defendant's Motion for Summary Judgment on Claim 1 is granted.

### B. CLAIM 2: RETALIATION

Plaintiff must prove three elements to prevail on a Title VII retaliation claim. First, Plaintiff must show that she engaged in protected opposition to discrimination. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004). Second, Plaintiff must demonstrate that she suffered an adverse action that a reasonable employee would find material. *Id.* Third, Plaintiff must provide sufficient evidence for a trier of fact to conclude that there is a causal nexus between her opposition and the employer's adverse action. *Id.*

Furthermore, the U.S. Supreme Court has clarified that the third element of Title VII retaliation claims require but-for causation. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). This high standard of but-for causation is in contrast

to the alternative requirement of "motivating factor" that applies to certain other Title VII discrimination claims. *Id*. Therefore, to succeed on a Title VII retaliation claim, a plaintiff must prove that the unlawful retaliation, such as a firing, would not have occurred if the plaintiff had not engaged in a protected activity, such as reporting sexual harassment. *Id.*

But-for causation can be difficult to prove, but pretextual reasons for a firing can be inferred if the reason given for firing is implausible, inconsistent, incoherent, or contradictory. *Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). Yet the Tenth Circuit has cautioned that when an employer gives reasons for a personnel decision, a court should not scrutinize the reasons for their wisdom or fairness, but instead a court must determine if the employer "honestly believed those reasons and acted in good faith upon those beliefs." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1170 (10th Cir. 2007). When an employer provides a nondiscriminatory reason for its personnel decision, the burden shifts to the plaintiff to prove that the employer's proffered explanation is a pretext to conceal intentional discrimination. *Id.* at 1166. Close timing of an adverse employment action to a protected employment activity can be a factor in demonstrating pretextual reasons, but this alone is not enough to defeat summary judgment. *Annett*, 371 F.3d at 1240.

In the instant case, Defendant contests only the third element of the retaliation claim. Defendant argues that there is insufficient evidence to suggest a causal nexus between Plaintiff's reporting of her being sexually harassed and Defendant's decision to fire Plaintiff. The Court agrees for the following two reasons.

First, Plaintiff has not presented facts to support her theory that but-for her allegations of sexual harassment, she would not have been fired. Bowman, who participated with Palmer in the decision to fire Plaintiff, did not know of Plaintiff's complaints about Butler when he participated in the decision to fire Plaintiff (Doc. # 32-1 at 68–69), so Bowman could not have engaged in retaliatory action. Further, Plaintiff admits that when she reported instances of Butler's alleged sexual harassment to Palmer, Palmer did not become upset with her. (*Id.* at 34.) Palmer confirmed Plaintiff's account in his own affidavit when he said that Plaintiff "had a right to complain about [Butler's] behavior if she was offended" and that he had no "animosity, displeasure, or ill feelings" toward Plaintiff because of her complaints. (*Id.* at 73.)

Second, Plaintiff has not offered any evidence to lead this Court to infer pretextual reasons for Plaintiff's firing. Rather, Plaintiff merely asserts that "going outside the chain of command" was an implausible reason to fire her. Yet, it appears that Plaintiff's actions caused an "uproar" with upper management. (*Id.* at 36.) In addition, prior to Plaintiff's engagement with the owner Elward, both Palmer and Bowman discussed firing Plaintiff for being tardy often, speaking too much with a coworker, and not knowing enough about the construction industry. (*Id.* at 55–56.) When Plaintiff went outside the chain of command and "caused an uproar" with management, Palmer considered this to be "the last straw". (*Id.*)

Not only did Palmer cite "going outside the chain of command" as the reason that Defendant was terminating Plaintiff's employment when informing her of his decision (Doc. # 1 at 7), Palmer also wrote a contemporaneous email explaining his decision to

human resources and upper management (Doc. # 32-1 at 70.) This provides additional evidence for Defendant's claim that it honestly believed its stated reason for firing Plaintiff. Given these facts, Defendant's reasons for firing Plaintiff seem neither implausible, inconsistent, incoherent, or contradictory. *See Garrett*, 305 F.3d at 1216. Therefore, insufficient evidence exists for the Court to conclude that Plaintiff's firing was pretextual.

The Tenth Circuit consistently affirms district court holdings of summary judgment on Title VII retaliation claims when a plaintiff provides weak evidence of pretextual reasons for a defendant's adverse employment action. *Annett*, 371 F.3d at 1241 (upholding the district court's granting of summary judgment because "mere conjecture" that the employer acted with discriminatory reasons "will not suffice to establish pretext."); *Chavez*, 397 F.3d at 839 (affirming district court ruling of summary judgment because a lack of evidence meant the plaintiff failed to demonstrate a "causal connection between the protected activity and the adverse employment action."); *Swackhammer*, 493 F.3d at 1166–1167 (upholding the district court's granting of summary judgment because the plaintiff failed to show that the defendant's proffered explanation was "unworthy of belief".) In the instant case, Plaintiff's mere conjecture that Defendant acted with pretextual reasons means that she is unable to demonstrate a causal connection between her reporting of sexual harassment by Butler and Defendant's decision to terminate her employment.

Even when viewing the evidence in the light most favorable to Plaintiff, there is insufficient evidence to conclude that, but for Plaintiff's reporting of alleged sexual

harassment, Defendant would not have fired Plaintiff. Plaintiff's allegation of retaliation is a conclusory statement based on conjecture. *See Bones*, 366 F.3d at 875. Therefore, Defendant's Motion for Summary Judgment on Claim 2 is granted.

### III. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Doc. # 32) is GRANTED.

DATED: September 27, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge